In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3086

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS ANDERSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CR 850--Elaine E. Bucklo, Judge.

ARGUED JUNE 4, 2001--DECIDED August 6, 2001

Before RIPPLE, EVANS and WILLIAMS, Circuit
Judges.

RIPPLE, Circuit Judge.  Thomas Anderson
was charged with embezzling and wilfully
misapplying $30,650 belonging to TCF
National Bank ("TCF") in Hickory Hills,
Illinois, in violation of 18 U.S.C. sec.
656. Mr. Anderson pleaded guilty to the
indictment. The district court sentenced
him to 41 months' imprisonment, four
years' supervised release, and a $100
special assessment. The court also
ordered him to make restitution in the
amount of $62,627.58. Mr. Anderson now
appeals various aspects of his sentence.
For the reasons set forth in the
following opinion, we affirm the judgment
of the district court.

I

BACKGROUND

A.  Facts

  Mr. Anderson was employed as an
assistant branch manager at TCF from
January 1999 through May 1999. In that
position, he had access to and control
over all TCF customer accounts and access
to information relating to bank
customers, such as their addresses, dates
of birth, account activity and account
balances. Additionally, as an assistant

branch manager, Mr. Anderson also was able to withdraw amounts in excess of $1,000 from TCF accounts without permission from a supervisor. Ordinary bank tellers had no such authority. While at the bank, Mr. Anderson also supervised a number of bank tellers, including Laurie Mullen and Alia Shehadi. During this time period, Shehadi was seventeen years old.

On March 26, 1999, Lottie Wasserbauer, an 85-year-old TCF customer, came to the bank to withdraw money from her account. Mr. Anderson processed this withdrawal personally. Wasserbauer wished to withdraw only $1,000 from the account, but Mr. Anderson altered the withdrawal slip so that $7,000 was withdrawn instead and kept the extra money for himself. Over a period of time lasting until May 20, 1999, Mr. Anderson made eight more unauthorized withdrawals from Wasserbauer's account. To do so, Mr. Anderson would take a cash deposit received from a customer and credit it to the appropriate account, but would actually embezzle the money in whole or in part and, in order to balance the TCF general ledger, would debit Wasserbauer's account in the amount that he had embezzled. In total, Mr. Anderson withdrew $30,650 from the account.

Mr. Anderson hid the proceeds from these unauthorized withdrawals in two ways. He opened a TCF account in the name of his brother, Joel Anderson, and deposited some of the money in that account. He then wire transferred a portion of those funds to an account in the name of Joel Anderson at the First National Bank of Omaha in Omaha, Nebraska. Additionally, Mr. Anderson deposited a portion of the Wasserbauer funds into a CD account that he established in a friend's name. In pleading guilty, Mr. Anderson admitted that he used all of the proceeds from these unauthorized withdrawals for his personal benefit.

B.  District Court Proceedings

After Mr. Anderson pleaded guilty to the charge in the indictment, the district court held a sentencing hearing on August 2, 2000. At that time, the Government presented as relevant conduct evidence of two types of additional unauthorized withdrawals, both of which it claimed

were made by Mr. Anderson. First, the Government presented evidence that Mr. Anderson, on his own or with the help of unsuspecting tellers, made unauthorized withdrawals from the CD accounts of another elderly TCF customer, 88-year-old Bertha Kern. Additionally, the Government presented evidence that Mr. Anderson used unwitting TCF tellers to make two additional withdrawals from the Wasserbauer account and then kept the money for himself.

At the sentencing hearing, Mr. Anderson testified that from March 26, 1999 to May 20, 1999, he took $30,650 from Wasserbauer's account. He explained that he used his teller identification number to make each of the unauthorized withdrawals and that he performed the transactions on his own. Mr. Anderson explained that, while processing Wasserbauer's withdrawal when she visited the bank on March 26, 1999, he asked if she would like to move her money to an account that would produce a greater return. Wasserbauer declined the offer. Nevertheless, Mr. Anderson stated that he then determined to move Wasserbauer's money into higher-yielding CD and brokerage accounts. He testified that he intended only to keep the interest that those accounts generated and that he planned to eventually return all of the money that he had taken from Wasserbauer to her account at TCF. Mr. Anderson further explained that the FBI met with him on June 9, 1999, and informed him that they suspected that he had embezzled the Wasserbauer funds. After that meeting, Mr. Anderson returned all of the money he had taken from Wasserbauer's account to the bank. He claimed that he was not responsible for either the unauthorized withdrawals from the Kern accounts or the two additional unauthorized $1,000 withdrawals from the Wasserbauer account that involved the use of bank tellers.

At the conclusion of the sentencing hearing, the district court determined that the Government had proven by a preponderance of the evidence that Mr. Anderson was responsible for the unauthorized withdrawals from the Kern account and the two additional unauthorized withdrawals from the Wasserbauer account. It therefore treated these actions as relevant conduct for

sentencing purposes. Additionally, the court found that Mr. Anderson had lied under oath when he (1) denied that he was responsible for that relevant conduct and (2) testified that he always had intended to return the funds from the unauthorized Wasserbauer withdrawals that were charged in the indictment. As a result, the court imposed a two-level enhancement for obstruction of justice under U.S.S.G. sec. 3C1.1. Due to its finding of perjury, the court also declined to grant Mr. Anderson a three-level reduction in his sentence for acceptance of responsibility under U.S.S.G. sec. 3E1.1. Next, the court determined that it also would enhance Mr. Anderson's sentence two levels for the abuse of a position of trust under U.S.S.G. sec. 3B1.3. It noted that Mr. Anderson's position as an assistant branch manager allowed him the discretion to make withdrawals in excess of $1,000 from Wasserbauer's account without supervision, authority that made his crime easier to accomplish. Lastly, the court found that a two-level enhancement under U.S.S.G. sec. 3B1.4 for the use of a minor to commit a crime also was proper because Mr. Anderson had used Shehadi, then seventeen years old, to unwittingly make unauthorized withdrawals for his benefit from the Wasserbauer and Kern accounts.

As a result of these findings and other enhancements not challenged here, the district court sentenced Mr. Anderson to 41 months' imprisonment, four years of supervised release, and a $100 special assessment. The court also directed him to make restitution in the amount of $62,627.58. Mr. Anderson now appeals various aspects of his sentence.

II

DISCUSSION

A.  Relevant Conduct

Mr. Anderson first challenges the district court's finding that he was responsible for the withdrawals from the Kern accounts and the two additional withdrawals from the Wasserbauer account that the Government offered as relevant conduct.

1.

A district court employs a preponderance of the evidence standard in making the factual finding that a defendant has engaged in relevant conduct. See United States v. Ofcky, 237 F.3d 904, 908 (7th Cir. 2001). However, Mr. Anderson contends that the court should have used a clear and convincing evidence standard in this case because the consideration of the relevant conduct increased his sentencing range from 12-18 months to 41-51 months./1

We have noted that, perhaps in extreme circumstances, an increase in a defendant's sentence might be so great as to require the use of the more demanding clear and convincing evidence standard of proof for sentencing factors. See id. at 907-08. Nonetheless, in Ofcky, we also explained that, when the consideration of relevant conduct increased a defendant's sentence from a range of 18-24 months to one of 37-46 months, an increase similar to the one Mr. Anderson faced, that increase was not an "extreme case" requiring a higher standard of proof. Ofcky, 237 F.3d at 908. Moreover, this court has approved the use of the preponderance of the evidence standard in instances in which a sentence was enhanced much more significantly than in Mr. Anderson's case./2 As a result, Mr. Anderson's situation is not that extreme case that might warrant the use of a higher standard of proof.

2.

Mr. Anderson also argues that, even under a preponderance of the evidence standard, the district court erred in finding that he was responsible for the relevant conduct attributed to him. We review a district court's sentencing determination that uncharged activity constitutes relevant conduct with great deference, reversing only for clear error. See Ofcky, 237 F.3d at 907; United States v. Sykes, 7 F.3d 1331, 1335 (7th Cir. 1993).

a.

We turn first to the unauthorized withdrawals made from the accounts of TCF customer Bertha Kern. On April 9, 1999, the address on Kern's CD accounts was changed to that of an incorrect address

in a trailer park. Mr. Anderson's teller identification number appeared as the TCF employee who processed that change of address./3 The address change was not authorized by Kern or by Elaine Parrington, who had a power of attorney to act for her. Subsequently, from February 1999 to May 1999, fifteen unauthorized withdrawals, each in amounts greater than $1,000, were made from the Kern accounts in amounts totaling $60,627.58. In addition to the fact that these withdrawals were performed without the knowledge of Kern or Parrington, other evidence suggested that the transactions were illegitimate. Typically, when a TCF bank customer withdraws funds, a withdrawal slip exists in the bank's records for that transaction; however, no withdrawal slips were retained for any of the Kern withdrawals. Notably, significant evidence indicates that Mr. Anderson was responsible for making these withdrawals from the Kern accounts on his own or by using unwitting bank tellers to do so for his benefit.

First, evidence directly links Mr. Anderson to unauthorized activity regarding the Kern accounts. As we have noted, Mr. Anderson's teller number appeared as the TCF employee who, without authorization, changed the address on the account to that of an incorrect address./4 Moreover, of the fifteen unauthorized withdrawals made from the Kern accounts, Mr. Anderson's teller number appeared on two of them. This evidence supports the conclusion that Mr. Anderson embezzled these funds using the same method that he used in the Wasserbauer account withdrawals.

With regard to the other thirteen withdrawals, twelve of which were actually processed by TCF tellers and not by Mr. Anderson, circumstantial evidence suggested that Mr. Anderson ultimately took those funds as well./5 The Government contended that, for these withdrawals, Mr. Anderson would prepare a withdrawal slip to be made from the TCF general ledger account in Wasserbauer's name and take the slip to one of the bank's tellers. The tellers, assuming Mr. Anderson was withdrawing the money for a client who was in his office, would then give him cash in exchange for the slip. Mr. Anderson would then keep the money

for himself. A number of facts support the conclusion that these withdrawals were made at Mr. Anderson's direction. Mr. Anderson was present in the bank on the days when each of these withdrawals was made. Moreover, teller identification numbers for employees that Mr. Anderson supervised appeared on twelve of these withdrawals. Each of the withdrawals involved sums greater than $1,000, and TCF policy mandated that tellers could not process transactions of that amount without authorization from a supervisor. Additionally, Shehadi testified that tellers could not process withdrawals from CD accounts like Kern's without a special access code provided by a supervisor. Shehadi also testified that she often processed withdrawals for Mr. Anderson in her role as a teller and that she did not take any of the Kern funds for herself.

Moreover, the Kern withdrawals were similar in some respects to the unauthorized withdrawals from the Wasser bauer account for which Mr. Anderson had pleaded guilty. Not only did both sets of transactions occur in the same time frame, but they each involved the accounts of elderly women with large balances. Additionally, evidence directly implicates Mr. Anderson in unauthorized activity with regard to both accounts. Unlike the Wasserbauer transactions for which he pleaded guilty, Mr. Anderson did not process all of the Kern withdrawals himself, and the money from the Kern transactions was not traced to him. However, the evidence is more than sufficient to demonstrate that the district court did not clearly err in attributing this conduct to Mr. Anderson.

b.

Mr. Anderson also contests the district court's finding that he was responsible for the two additional withdrawals from the Wasserbauer account that were not charged in the indictment. The Government demonstrated that on April 5, 1999, $1,000 was withdrawn from the Wasserbauer account by Shehadi and that on April 23, 1999, $1,000 was withdrawn from that account by Mullen, another teller. These two withdrawals were not authorized by the account holder, and no withdrawal slips were recorded for these

transactions, indicating the transactions were fraudulent.

Once again, circumstantial evidence suggests that it was Mr. Anderson who asked the unsuspecting tellers to make the withdrawals for him, but then kept the money himself. As with the Kern transactions, these two withdrawals were made by tellers supervised by Mr. Anderson, on days in which Mr. Anderson was working at the bank. Because the withdrawals were in amounts of $1,000, Shehadi and Mullen would have needed a supervisor's permission to make them. Both Mullen and Shehadi indicated that as tellers, they often made similar withdrawals for Mr. Anderson, and Shehadi testified that she did not take any money for herself from the Wasserbauer account. In light of these facts, and the reality that Mr. Anderson admitted to personally making unauthorized withdrawals from the same Wasserbauer account during that time period, the district court did not clearly err in determining that Mr. Anderson was responsible for these additional two withdrawals.

B. Obstruction of Justice and Acceptance of Responsibility

The district court also determined that Mr. Anderson had perjured himself and therefore should receive a two-level enhancement for obstruction of justice under U.S.S.G. sec. 3C1.1. Specifically, the court found that he lied when he (1) denied that he caused the Kern withdrawals and the additional Wasserbauer withdrawals that were presented as relevant conduct and (2) claimed that he never intended to keep the Wasserbauer funds that he was charged with embezzling in the indictment.

A sentencing court may enhance a defendant's offense level under sec. 3C1.1 if "the defendant willfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing." U.S.S.G. sec. 3C1.1. An enhancement under U.S.S.G. sec. 3C1.1 for perjury is appropriate when a "'witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or

faulty memory.'" United States v. Jefferson, 252 F.3d 937, 942-43 (7th Cir. 2001) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)); see also United States v. Gage, 183 F.3d 711, 715 (7th Cir. 1999).

Although it is advisable for a district court to address each element of the alleged perjury in a separate and clear finding, all that is required to impose the obstruction of justice enhancement on perjury grounds is that the court make a finding that encompasses the factual predicates for a finding of perjury. See United States v. White, 240 F.3d 656, 662 (7th Cir. 2001); United States v. Freitag, 230 F.3d 1019, 1026 (7th Cir. 2000). We review de novo whether the dis trict court made the appropriate findings to support a sec. 3C1.1 enhancement for perjury. See United States v. Turner, 203 F.3d 1010, 1020 (7th Cir. 2000). If the appropriate findings are made, we review the factual findings underlying the district court's determination that perjury occurred for clear error. See id. "We fully recognize that the district judge was in the best position to evaluate [Mr. Anderson's] truthfulness and we will not disturb [his] sentence unless we are firmly convinced that the sentencing judge was mistaken when he determined that [Mr. Anderson] committed perjury." United States v. Stokes, 211 F.3d 1039, 1044 (7th Cir. 2000) (citations and quotation marks omitted). Mr. Anderson argues that the court clearly erred in determining that he committed perjury at the sentencing hearing./6

With regard to the district court's finding of perjury regarding the Kern withdrawals and the additional Wasserbauer withdrawals presented as relevant conduct, we have previously indicated that the court did not clearly err in concluding that Mr. Anderson was responsible for taking those funds. As a result, we cannot agree with Mr. Anderson that the district court clearly erred in determining that his denial of that conduct amounted to perjury.

Mr. Anderson also testified at the sentencing hearing that, although he had embezzled the funds from the Wasserbauer account charged in the indictment, he intended only to invest those funds "in something that would make more money,

keep the percentage, and then repay whatever I had taken out [of the Wasserbauer account]." Tr. II at 92. The district court found, however, that this claim also amounted to perjury and warranted the obstruction enhancement. Ample evidence supported this finding. For example, Mr. Anderson did not return these funds to the bank until after the FBI had visited him and indicated that it knew that he had taken the money without authorization. Moreover, Mr. Anderson admitted that he had placed these funds in accounts set up in the names of relatives and that he had used the money for his personal benefit. These facts provide sufficient evidence to support a finding that Mr. Anderson intended to conceal these withdrawals and to appropriate the money on a permanent basis, and that he only returned the funds when the authorities indicated that they were aware of his wrongdoing. As a result, the court's finding of perjury in this regard also supports the enhancement.

Additionally, Mr. Anderson contests the court's denial of a three-level reduction in his sentence for acceptance of responsibility under U.S.S.G. sec. 3E1.1. The court declined to grant this reduction because it found that Mr. Anderson had committed perjury as to the matters we have just discussed. Whether a defendant has accepted responsibility for his actions is a factual question and one that we review for clear error. See United States v. Utecht, 238 F.3d 882, 888 (7th Cir. 2001); United States v. Taliaferro, 211 F.3d 412, 414 (7th Cir. 2000).

When a sentencing court properly enhances a defendant's offense level under U.S.S.G. sec. 3C1.1 for obstructing justice, the defendant is presumed not to have accepted respon-sibility for his actions under the meaning of U.S.S.G. sec. 3E1.1. See U.S.S.G. sec. 3E1.1, Application Note 4; United States v. Branch, 195 F.3d 928, 937 (7th Cir. 1999); United States v. Ewing, 129 F.3d 430, 435 (7th Cir. 1997). There may be "extraordinary cases in which adjustments under both sec.sec. 3C1.1 and 3E1.1 may apply," U.S.S.G. sec. 3E1.1, Application Note 4, such as when a defendant obstructed justice at an early point, but then later accepted responsibility and

cooperated fully, see United States v. Lallemand, 989 F.2d 936, 938 (7th Cir. 1993) (explaining that a defendant can obstruct or attempt to obstruct justice at time "t" and later accept responsibility at time "t + 1"). However, Mr. Anderson does not contend that this is such a case. Instead, he simply argues that, because the district court improperly found his statements to warrant an enhancement for obstruction of justice, the court erred in not granting him a reduction for acceptance of responsibility. In line with our conclusion that the district court did not err when it found that Mr. Anderson had committed perjury at the sentencing hearing, we also determine that it did not clearly err in denying a reduction under U.S.S.G. sec. 3E1.1.

C.  Abuse of a Position of Trust

  Mr. Anderson next contests the district court's finding that he "abused a position of public or private trust" in taking funds from the bank accounts of others, a determination that resulted in a two-level enhancement to his sentence. U.S.S.G. sec. 3B1.3. We review the sentencing court's interpretation of the meaning of "position of trust" de novo, United States v. Hernandez, 231 F.3d 1087, 1089 (7th Cir. 2000), but review only for clear error the court's factual finding that a defendant occupied and abused a position of trust to facilitate his offense, see United States v. Bailey, 227 F.3d 792, 801 (7th Cir. 2000).

  In order for an enhancement for an abuse of a position of trust to apply, "the district court must find that: (1) the defendant occupied a position of trust, and (2) the defendant's abuse of that position of trust significantly facilitated the commission of the crime." United States v. Sonsalla, 241 F.3d 904, 909 (7th Cir. 2001). Mr. Anderson claims that he did not occupy a position of trust because his illegal conduct simply involved his actions as a bank teller. The commentary to U.S.S.G. sec. 3B1.3 notes that a position of trust is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)"/7 but specifically states that "[t]he adjustment does not apply in the case of

an embezzlement or theft by an ordinary bank teller . . . because such [a] position[ is] not characterized" by the possession of such discretion. U.S.S.G. sec. 3B1.3, Application Note 1.

However, as the Government notes, Mr. Anderson was an assistant branch manager at TCF, not an ordinary bank teller. In that position, Mr. Anderson had access to any account in the bank system. As a result, he had access to or authority over valuable things, an indicator that we previously have found to be a hallmark of a position of trust. See Hernandez, 231 F.3d at 1089; Bailey, 227 F.3d at 801. More significantly, unlike an ordinary bank teller, Mr. Anderson had the authority to withdraw funds from TCF accounts in amounts over $1,000 without obtaining a supervisor's permission. Additionally, as a supervisor, Mr. Anderson had knowledge of a code to access CD accounts (such as the Kern accounts), which ordinary bank tellers did not possess. These attributes of his position gave him substantial discretion and responsibility, allowing him to withdraw improperly large amounts of money from any account in the bank without coming under the scrutiny of other bank employees. As a result, Mr. Anderson's job properly was considered a position of trust within the meaning of the guideline and our precedent. Cf. Sonsalla, 241 F.3d at 909-10 (holding that defendant's position as bank vice president, which allowed him knowledge of the banking system and the operations of the bank, as well as the ability to oversee commercial and real estate loans and to act as a compliance officer, qualified as a position of trust); Hernandez, 231 F.3d at 1091 (holding that staff accountant for electronics corporation who had autonomy in preparing check requests, whose supervisors virtually rubber-stamped his work and who had ability to use routine forms to route large payment checks directly into his hands, occupied position of trust); United States v. Dion, 32 F.3d 1147, 1150 (7th Cir. 1994) (noting that installment loan officer who wrote fraudulent loans that he used to pay personal obligations occupied position of trust, as his position enabled him to misapply funds and conceal it without approval from anyone)./8

Mr. Anderson also maintains that the district court erred in applying this enhancement because U.S.S.G. sec. 3B1.3 states that the adjustment "may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic." Mr. Anderson claims that the charge of embezzlement under 18 U.S.C. sec. 656 necessarily includes an abuse of trust. However, we have "categorically" rejected this argument. Dion, 32 F.3d at 1150 (distinguishing an abuse of trust as defined in U.S.S.G. sec. 3B1.3 from the simple breach of trust implicated in an embezzlement charge under 18 U.S.C. sec. 656). As a result, the district court did not err in applying this enhancement to Mr. Anderson's sentence.

D.  Using a Minor to Commit a Crime

Lastly, the district court enhanced Mr. Anderson's sentence under U.S.S.G. sec. 3B1.4, which provides for a two-level enhancement if "the defendant used or attempted to use a person less than eighteen years of age to commit the offense." A defendant "used" a minor in the commission of his crimes if his affirmative actions involved minors in his criminal activities. See United States v. Vivit, 214 F.3d 908, 920 (7th Cir.), cert. denied, 121 S. Ct. 388 (2000). The guideline further explains that the phrase "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. sec. 3B1.4, Application Note 1; see also United States v. Brack, 188 F.3d 748, 765 (7th Cir. 1999). Notably, the "enhancement in section 3B1.4 focuses on whether the defendant used a minor in the commission of a crime, not whether the minor knew that he was being used to commit a crime." United States v. Ramsey, 237 F.3d 853, 861 (7th Cir. 2001), petition for cert. filed (U.S. Apr. 18, 2001) (No. 00-9546). We review de novo the district court's interpretation of U.S.S.G. sec. 3B1.4. See Ramsey, 237 F.3d at 855. The nature of the interaction between Mr. Anderson and Shehadi is a question of fact that we review for clear error. See id.

The court applied this enhancement after finding that Mr. Anderson used Shehadi, a

TCF teller who was seventeen years old at the time, to make three of the fifteen withdrawals from the Kern accounts and one of the two additional withdrawals from the Wasserbauer account. Mr. Anderson claims that insufficient evidence existed to suggest that Shehadi made these withdrawals for him. However, Shehadi's teller identification number accompanied each of these withdrawals. Although she did not recall making these specific withdrawals for Mr. Anderson, Shehadi testified that she often made such withdrawals for him in her role as a teller. Lastly, as we previously have noted in our discussion of the district court's consideration of the relevant conduct, there is sufficient evidence suggesting that Mr. Anderson was responsible for directing tellers like Shehadi to make these unauthorized withdrawals. In light of this evidence, the district court did not clearly err in finding that Shehadi made these withdrawals for Mr. Anderson./9

Conclusion

   For the reasons set forth in this opinion, the district court did not err in sentencing Mr. Anderson. Therefore, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 The increase in Mr. Anderson's sentence is largely due to the district court's finding that he had committed perjury, a finding made in part because he denied committing the relevant conduct. This determination resulted in a two-level increase for obstruction of justice and a denial of a three-level reduction for acceptance of responsibility. Without considering the relevant conduct and with an acceptance of responsibility reduction, Mr. Anderson's sentence would have been in the 12-18 month range. With an acceptance of responsibility reduction, the introduction of the relevant conduct would have resulted in raising Mr. Anderson's sentence only to a range of 24-30 months. However, the enhancement for obstruction of justice and the resulting loss of the acceptance of responsibility reduction increased the sentence to one in the 41-51 month range.

/2 See, e.g., United States v. Rodriguez, 67 F.3d 1312, 1323 (7th Cir. 1995) (enhancement from 51-

63 month range to sentence of life imprisonment); United States v. Porter, 23 F.3d 1274, 1277 (7th Cir. 1994) (enhancement from 33-41 month range to 137-month sentence); United States v. Masters, 978 F.2d 281, 286-87 (7th Cir. 1992) (enhancement from 33-41 month range to 40-year sentence); United States v. Schuster, 948 F.2d 313, 315-16 & n.3 (7th Cir. 1991) (enhancement from 21-27 month range to 5-year sentence); cf. United States v. Kikamura, 918 F.2d 1084, 1089 (3d Cir. 1990) (adopting a clear and convincing standard when the district court departed upward from a sentencing range of 27-33 months to impose a sentence of 30 years).

/3 A teller identification number at TCF is a unique number that identifies the bank employee responsible for transactions, accessible only by that employee's password.

/4 The effect of this address change was that Kern and Parrington did not receive bank statements regarding the CD accounts, hindering them for a time from noticing that unauthorized activity had occurred on those accounts.

/5 The thirteenth withdrawal was made by Tracey Blunk, also an assistant branch manager at TCF. At the sentencing hearing, FBI Special Agent Maureen Reddy testified that she had interviewed Blunk, who explained that, in her position, she did not typically perform such withdrawals and did not recall this particular transaction. However, Blunk indicated that she would occasionally stand in for a teller and that, if Mr. Anderson had brought a withdrawal slip to her on such a day, she would have performed the transaction for him without question.

/6 It is possible to read Mr. Anderson's brief as also arguing that, even if he did lie regarding his intention to return the Wasserbauer funds charged in the indictment, that lie was not material. See Appellant's Reply Br. at 8. However, "all that is required for a lie to be material is that it could, to some reasonable probability, affect the outcome of the . . . sentence." United States v. Buckley, 192 F.3d 708, 710 (7th Cir. 1999), cert. denied, 529 U.S. 1137 (2000). In this case, whether Mr. Anderson intended to return these funds was material to his sentence in that it affected whether he would receive an acceptance of responsibility reduction.

/7 The commentary goes on to note that persons in a position of trust "ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. sec. 3B1.3, Application Note 1.

/8 Although Mr. Anderson does not explicitly contest the point, we note that his abuse of the position of trust also facilitated significantly the commission of the crime. As our previous discussion indicates, due to the ability to process transactions over $1,000 without approval from anyone, Mr. Anderson was able to make withdrawals from the Wasserbauer account without arousing suspicion. Had he not been granted such authority, his ability to successfully appropriate those funds would have been impeded greatly.

/9 Mr. Anderson also suggests that because Shehadi's involvement related to the relevant conduct considered by the district court, not to acts charged in the indictment, it cannot be used to enhance his sentence under U.S.S.G. sec. 3B1.4. However, we have noted that "'the determination of a defendant's role in the offense is to be made on the basis of all [relevant] conduct . . . and not solely on the basis of elements and acts cited in the count of conviction.'" United States v. Ramsey, 237 F.3d 853, 861-62 (7th Cir. 2001), petition for cert. filed (U.S. Apr. 18, 2001) (No. 00-9546) (applying U.S.S.G. sec. 3B1.4) (quoting U.S.S.G. ch. 3, pt. B, introductory cmt.). As a result, the application of this enhancement in this case was proper.