**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry B. PETERSON, Defendant–
Appellant.**

No. 01–3080.

United States Court of Appeals,
Seventh Circuit.

Argued March 6, 2002.

Decided March 15, 2002.

Before POSNER, EVANS, and
WILLIAMS, Circuit Judges.

### ORDER

Felon Larry Peterson pleaded guilty to possessing firearms in violation of 18 U.S.C. § 922(g)(1) and received 37 months' imprisonment. On appeal Peterson argues that the district court improperly imposed an obstruction-of-justice adjustment, denied an acceptance-of-responsibility adjustment, and imposed sentence outside the "heartland." Because the district court

correctly rejected each contention, we affirm Peterson's conviction and sentence.

On April 10, 2000, Peterson was staying at 1268 Montana Street in Gary, Indiana–a reported drug house leased by Juanita Bradley (described both as Peterson's "friend" and his "girlfriend"). In the early morning hours, Andre West knocked on the door carrying an Intratec 9 mm handgun (a "TEC–9") and allegedly told Peterson to kill Bradley because she was going to testify in West's upcoming drug case. Peterson and West began to argue, shots were fired, and West abandoned his TEC–9 and fled the house wounded in the back of the head. Although Peterson never testified and no one else at the house saw the shooting, the Gary Police Department offense report (which narrates West's version of events) evidences that Peterson pulled a gun and after a struggle over that weapon shot West as he fled.

Hearing gunfire, Bradley and two other friends, Clarence Lynch and Toni James, also fled but returned shortly to get Peterson before heading to a Motel 6. Bradley rented a room for Peterson and James, and she and Lynch then left in separate cars. Around 8:30 a.m. police officers stopped Bradley, who described the shooting and revealed West's TEC–9 hidden in a garbage can near her house. Officers then drove to the motel and arrested Peterson, who had in his room an Iver–Johnson .380 caliber semi-automatic pistol and a Mossberg 12–gauge shotgun with a pistol grip.

Peterson's possession of the two weapons led to a federal arrest warrant, and as the result of a routine traffic stop on May 25, Gary police officers discovered two more guns belonging to Peterson, a Raven Arms handgun in the car and a Maverick Arms 12–gauge shotgun at Bradley's house. On June 22 a grand jury indicted Peterson on two counts of possession of a firearm by a felon. Count One charged possession of the guns found at the Motel 6; Count Two charged possession of the guns discovered after the traffic stop. Peterson pleaded guilty to Count Two, but his presentence report also credited him with the guns charged in Count One as relevant conduct.

Peterson, through his lawyer, objected that those guns belonged to West and that he possessed them only because West left them behind after the shooting. West dropped the Iver–Johnson during the struggle, counsel claimed, and Peterson later found the Mossberg in West's car. According to counsel, Peterson took the guns to protect himself and his friends, and so they should not count as relevant conduct. Instead, counsel continued, Peterson should receive a sentencing departure because he had the guns out of necessity. The government responded that West had only one gun on April 10, the TEC–9, and that the Iver–Johnson and Mossberg found at the motel belonged to Peterson all along. Having taken the position that Peterson was lying, the government refused to recommend a downward adjustment for acceptance of responsibility and instead requested an upward adjustment for obstruction of justice.

At sentencing Peterson did not testify (he declined the opportunity after consulting with counsel). Bradley did testify, and she asserted that in addition to the TEC–9 she briefly saw a second gun in West's pocket. But on cross examination she admitted that she never told officers that West had additional weapons and that she lied to police when asked who disposed of the TEC–9. Lynch had actually dropped the gun in the garbage can at Peterson's direction, Bradley testified, but she told officers that she threw the TEC–9 out because she knew that it was illegal for Lynch, a felon, to have a weapon. The

government also introduced the offense report–recounting West's story that Peterson pulled a gun on him–and a statement made by Toni James to FBI investigators ascribing only one weapon to West, the TEC–9.

The district court rejected Bradley's testimony as not credible and concluded that Peterson had tried to mislead the court and probation officials into thinking he did not have a gun before West arrived. After adjusting upward for obstruction of justice and denying a downward adjustment for acceptance of responsibility, the court concluded that 37 months' imprisonment was not "outside the heartland" and imposed sentence.

■■■ On appeal Peterson first contests the obstruction-of-justice adjustment and denial of an acceptance-of-responsibility adjustment. These factual determinations are reviewed for clear error, *United States v. Mayberry*, 272 F.3d 945, 948 (7th Cir. 2001), so we will affirm absent a "definite and firm conviction that a mistake has been committed," *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Section 3C1.1 of the sentencing guidelines authorizes a two-level upward adjustment for willful obstructive conduct, including suborning perjury and providing a judge or probation officer with false information. U.S.S.G. § 3C1.1 & comment. (n.4). Although § 3C1.1 does not aim to punish a defendant for putting on a defense, *id.* § 3C1.1, comment. (n.2), the right to a defense does not include the right to lie to the court, *see United States v. Dunnigan*, 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), or to mislead the court by supplying probation officials with materially false information, *see United States v. Garcia*, 69 F.3d 810, 817–18

(7th Cir.1995). Because a lawyer acts as the defendant's agent, *see United States v. Boyd*, 86 F.3d 719, 721 (7th Cir.1996), misleading presentations made through counsel (with the defendant's acquiescence) can be a basis for enhancing punishment even though the defendant was otherwise silent, *see United States v. Purchess*, 107 F.3d 1261, 1269 (7th Cir.1997).

■■■ Here Peterson, through counsel, sought a lesser sentence by telling probation officials and then the district court that the guns found in the motel belonged to West. He asserted that he picked the Iver–Johnson up after West dropped it and that he found the Mossberg in West's car. But the only evidence for Peterson's story came from Bradley, and the district court found her not credible. As the district court observed, Bradley never told officers that West had more than one gun, and she lied about who hid the TEC–9 to keep one of her friends out of trouble. True, the government responded with nothing but James's statement, ascribing to West only the TEC–9, and the offense report, recounting West's assertion that Peterson had a gun that he pulled before the shooting. So nothing in the record conclusively establishes the government's version of events over Peterson's. But the district court's finding that Bradley was not credible is entitled to particular deference, *see Anderson*, 470 U.S. at 575; *United States v. White*, 240 F.3d 656, 661 (7th Cir.2001), and as between two permissible views of the evidence, a district court's choice of one cannot be clearly erroneous, *see Anderson*, 470 U.S. at 574. Thus, it was not improper for the district court to conclude that West fabricated his story and to adjust accordingly for obstruction of justice.

■■■ As for acceptance of responsibility, we presume that a defendant who has obstructed justice has not accepted respon-

**792**

sibility. *Mayberry*, 272 F.3d at 949; *United States v. Buckley*, 192 F.3d 708, 711 (7th Cir.1999); U.S.S.G. § 3E1.1, comment. (n.4). The presumption may be rebutted in "extraordinary cases," *United States v. Anderson*, 259 F.3d 853, 862 (7th Cir.2001), but Peterson does not argue that his case is extraordinary, and the record would not support such an argument if he made it. The extraordinary cases ordinarily follow a pattern of obstruction followed by contrition, *see Mayberry*, 272 F.3d at 949 (discussing cases); Peterson's argument is that he never obstructed justice in the first place. In rejecting that argument, the district court was entitled to find that Peterson had not accepted responsibility as well. *See id.* at 949–50; *United States v. Johnson*, 227 F.3d 807, 815–16 (7th Cir.2000).

Finally, Peterson argues that the district court should have departed downward because his case was outside the guidelines' "heartland." In support, Peterson reasserts his argument that he armed himself with West's guns only in response to West's aggression. *See, e.g.,* U.S.S.G. § 5K2.10 (authorizing a departure because the victim provoked the offense); *id.* § 5K2.11 (authorizing a departure because the defendant acted to avoid harm to others). But as the government points out, we have no jurisdiction to review a refusal to depart unless the district court erroneously concluded that it had no authority to depart. *United States v. Crucean*, 241 F.3d 895, 897–99 (7th Cir.2001); *United States v. Murray*, 89 F.3d 459, 463 (7th Cir.1996); *United States v. Tholl*, 895 F.2d 1178, 1180 n. 2 (7th Cir.1990). Nothing in the record demonstrates that the district court thought itself powerless. To the contrary, Judge Lozano considered and rejected Peterson's argument for a departure, expressly finding that the case was not outside the heartland and that no other reason existed to depart downward.

Moreover, even if we had jurisdiction, Peterson's argument is frivolous, for it assumes the truth of his version of events. Because the district court had just found that Peterson obstructed justice with his story about West bringing all the guns, as the court was entitled to do, it would have made no sense to then grant a departure on the theory that Peterson acquired West's weapons after West fled.

AFFIRMED.