NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 2, 2007
Decided May 12, 2008

**Before**

DANIEL A. MANION,  *Circuit Judge*

ILANA DIAMOND ROVNER,  *Circuit Judge*

TERENCE T. EVANS,  *Circuit Judge*

| | |
|---|---|
| No. 06-4425 | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 06 CR 92 |
| *v.* | |
| | **John Daniel Tinder**, *Judge*. |
| RIGOBERTO E. CASTRO, *Defendant-Appellant*. | |

## O R D E R

Rigoberto Castro, also known as Jose Barragan, was convicted of possession with intent to distribute cocaine.  The district court sentenced Castro to 165 months' imprisonment, after assessing him a four-level upward adjustment for being an organizer or leader of a criminal activity involving five or more persons, and a two-level upward adjustment for use of a minor during the commission of the offense.   Castro appeals, arguing that the district court erred in enhancing his sentence for being an organizer or leader and for using a minor.  We affirm the district court.

# I.

Castro was a drug dealer.  Law enforcement officials learned of Castro's dealings following the arrest of Esteban Martinez and Rosa Loredo on May 14, 2006, in Sheboygan, Wisconsin. At the time she was arrested, Loredo was in possession of 531 grams of cocaine and 59 grams of marijuana.  After agreeing to cooperate with the government, she identified Castro as her source. As part of her cooperation with the government, Loredo detailed her earlier dealings with Castro. She told law enforcement officers that she had begun working for Castro months earlier, after Castro had helped her financially.  Specifically, Castro paid for Loredo to relocate from Texas to Indiana (where he lived), paying both her bus fare and for an apartment.  About one week later, Loredo and an associate of Castro's, Marco, transported a cooler to Texas from Indiana using a car belonging to Castro. Although Loredo claimed she did not know what was in the cooler at the time, she was paid $1,000 for making this trip, and she later learned that Castro used coolers (modified to provide a hiding place for drugs) to transport drugs. After that, Loredo made several trips from Indianapolis, Indiana, to Sheboygan, Wisconsin, transporting varying amounts of cocaine and marijuana that she received from Castro or, on at least one occasion, from Castro's nephew and another unidentified man. Once in Wisconsin, Loredo supplied the drugs to Martinez who sold them. Martinez gave Loredo large amounts of currency, which she transported back to Castro in Indiana. Later, Loredo again met Marco, this time picking up a cooler from him which Castro told her contained both cocaine and marijuana.  Castro told Loredo to make sure that Martinez weighed it right and to be careful and drive the speed limit. Loredo took the cooler to Martinez and two weeks later returned to Indianapolis with the cooler in which Martinez had stowed $13,000.  Loredo gave the cooler and the money to Castro.  The next day, Castro told Loredo he wanted her to take another trip. This trip sent Loredo to a McDonald's parking lot, where she met an individual she knew as Castro's nephew.  Castro's nephew handed Loredo a large radio containing over a half a kilogram of cocaine hidden in the speakers.  Castro again told Loredo to be careful and drive the speed limit. Loredo delivered the cocaine to Martinez in Wisconsin, but later retrieved it from where Martinez had stored it after learning that officers had arrested him. Loredo was still in possession of the drugs when the officers conducted a traffic stop and arrested her on May 14, 2006.

After a search of her apartment revealed additional drug evidence, Loredo agreed to assist law enforcement. In addition to detailing for the government her earlier dealings with Castro, Loredo agreed to place and record telephone calls to Castro's cell phone. During one of these conversations, Castro directed Loredo to send wire transfers to individuals in California and Mexico. Loredo testified that these payments were for drugs she expected to receive from Castro, and the district court found the trial testimony of Loredo credible and corroborated by other physical evidence. Loredo also arranged to make a controlled purchase from Castro. Specifically, on May 18, 2006, Loredo and an undercover agent went to Indianapolis to meet Castro at a Holiday Inn Express, intending to buy half a kilogram of cocaine. Agents placed $10,000 inside a large "modified" radio that Loredo had previously obtained from Castro's nephew. That evening, Castro told Loredo that the cocaine would be inside a cooler. Castro later arrived at the hotel in a green Jeep Cherokee, driven by another individual. Castro went to the hotel to meet Loredo, and the driver of the Jeep drove away. About an hour later, Castro made a telephone call, and the Jeep returned. After seeing the Jeep pull into the parking lot, Castro took the radio with the $10,000 secreted inside and walked outside. Officers then arrested Castro and the driver of the Jeep, who turned out to be a 16-year-old juvenile. Inside the Jeep, officers found a plastic cooler with nearly half a kilogram of cocaine.

Based on these facts, a grand jury indicted Castro with conspiracy to possess with intent to distribute 500 grams or more of cocaine, possession with intent to distribute cocaine, and unlawful reentry to the United States after having been previously deported for a felony. Castro pleaded guilty to unlawful reentry to the United States, and a jury convicted him of possession with intent to distribute. The jury deadlocked on the conspiracy to possess with intent to distribute 500 grams or more of cocaine count, and the government later dismissed that count. The district court sentenced Castro to 165 months' imprisonment, after assessing him a four-level upward adjustment for being an organizer or leader of a criminal activity involving five or more individuals, and a two-level upward adjustment for use of a minor during the commission of the offense. Castro appeals.

II.

On appeal, Castro first argues that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3B1.1. Sentencing Guideline § 3B1.1 provides for a four-

level adjustment to a defendant's base offense level if the defendant was "an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To qualify for a U.S.S.G. § 3B1.1 enhancement under the "five or more participants" clause, the defendant must provide leadership and organization to a criminal enterprise comprised of at least five individuals and must actually control at least one of those participants. *United States v. Blaylock*, 413 F.3d 616, 621 (7th Cir. 2005). In determining if the enhancement applies, a court may consider relevant conduct, *United States v. D'Ambrosia*, 313 F.3d 987, 993 (7th Cir. 2002). Further, the court should consider several factors, including: the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1 Application Note 4. This court reviews a district court's determination of a defendant's role in the offense for clear error. *United States v. Hamzat*, 217 F.3d 494, 497 (7th Cir 2000).

In this case, the district court did not commit clear error in assessing Castro a four-level enhancement under U.S.S.G. § 3B1.1(a). While Castro takes issue with this findings, claiming that his relationship with Loredo was merely a buy-sell relationship, the evidence was more than sufficient to support the district court's conclusion that Castro controlled Loredo. Specifically, the evidence supported the finding that Castro controlled Loredo first by recruiting her into the organization and then by directing her to take drugs to different locations and to return with the money paid for those drugs. Castro also directed Loredo to make wire transfers of money, which Loredo testified were to pay for future drug shipments. Additionally, the evidence established that the criminal enterprise involved five or more participants, namely Castro, Loredo, Martinez, Marco, Castro's nephew, the 16-year-old juvenile, and another unidentified man. Castro responds that the evidence was insufficient to show that the other individuals were "participants" as defined by the Guidelines. Application Note 1 for U.S.S.G. § 3B1.1 defines a participant as "a person who is criminally responsible for the commission of the offense." Castro then argues that there is no evidence that Martinez, Marco, his nephew, the juvenile or the unidentified man were involved in the offense, as opposed to just a single buy-sell transaction or merely being present during the offense. While there is no evidence that the juvenile knew he was transporting drugs, there is evidence that Martinez, Marco, his nephew, and the other unidentified man

participated in the criminal enterprise.  Specifically, Loredo testified as to these other individuals' roles in the offense (delivering drugs and selling drugs in transactions arranged by Castro).  This testimony was sufficient to support the district court's finding that there were five or more participants.  Alternatively, even if there were not five or more participants involved in the criminal activities, the district court also found the criminal activity "otherwise extensive."  This finding was not clearly erroneous as the evidence established that the activity spanned multiple states, including Texas, Indiana, Wisconsin, and California, and involved numerous participants and large amounts of illegal drugs.  Accordingly, the district court did not err in assessing Castro a four-level enhancement under U.S.S.G. § 3B1.1(a).

Castro also claims that the district court erred in assessing him a two-level upward adjustment under U.S.S.G. § 3B1.4, which provides for such an enhancement if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense or to assist in avoiding detection of, or apprehension for the offense."  U.S.S.G. § 3B1.4.  Application Note 1 indicates that "used or attempted use" includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."  U.S.S.G. § 3B1.1 Application Note 1.  This court reviews the district court's factual findings for sentencing enhancements for clear error. *See United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006).

In this case, the district court did not commit clear error in finding that Castro used a person under the age of eighteen.  The evidence showed that Castro arrived at the hotel in a green Jeep and that the driver then departed. However, later, before leaving the hotel with the drug money, Castro first placed a call, and the Jeep returned, driven by a 16-year-old juvenile.  Then as Castro left with the drug money officers arrested him and the driver of the Jeep.  Inside the Jeep officers recovered a cooler with nearly half a kilogram of cocaine.  Castro argues that there is no evidence that the juvenile had gone to retrieve the drugs before returning to the hotel.  That is irrelevant, though, as the evidence showed that Castro "used" the juvenile to drive the Jeep (with the drugs inside) to the location of the drug deal.  Whether a minor knows that he is transporting drugs is irrelevant. *See United States v. Anderson*, 259 F.3d 853, 863 (7th Cir. 2001) (holding that adjustment applies even if the minor does not know she is being used to commit the offense).  What is relevant is that by using the minor, Castro was able to separate himself from the drugs in the event that the proceedings inside the hotel did not go according to plan, while still being able to retrieve the drugs from the

Jeep by calling the minor back to the hotel.  Under these circumstances, the district court did not commit clear error in assessing Castro a two-level adjustment pursuant to U.S.S.G. § 3B1.4 for using a minor in committing the offense.

## III.

The district court did not err in enhancing Castro's offense level four levels pursuant to § 3B1.1(a) because the evidence was sufficient to support the finding that Castro was an organizer or leader of an enterprise involving five or more individuals or was otherwise extensive.  The district court also did not err in enhancing Castro's sentencing level by two levels pursuant to U.S.S.G. § 3B1.4 because the evidence showed that Castro used a minor to drive the narcotics to the drug deal.  For these and the forgoing reasons, we AFFIRM.